**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PERRY STANLEY, SR. , et al.,** | : | |
| **Plaintiffs,** | : | **Case No. 2:07-cv-694** |
| **v.** | : | **Judge Holschuh** |
| **MARTIN MALONE, et al.,** | : | **Magistrate Judge Kemp** |
| **Defendants.** | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Perry Stanley, Sr. and Deborah Stanley seek relief pursuant to 42 U.S.C. § 1983 for alleged violations of their constitutional rights. Defendants include police officers from the Columbus Division of Police ("CDP") Auto Theft Squad and the Licking County Sheriff's Office ("LCSO"). The Court has previously dismissed all claims against the LCSO Defendants as time-barred. This matter is currently before the Court on cross-motions for summary judgment filed by the remaining parties. (Docs. 117, 118).

## I.     Background and Procedural History

On July 10, 2005, a 1994 GMC pickup truck, pulling a trailer hauling an orange 1967 Pontiac LeMans worth more than $50,000, was stolen from a hotel parking lot in Columbus, Ohio. Defendant Martin Malone, a detective in the CDP Auto Theft Squad, was the lead detective assigned to the case. (Malone Aff. ¶¶ 3-4; Ex. to Defs.' Mot. Summ. J.). Through various tips, Malone learned that the thieves sold the LeMans to Stephen Duke who, in turn, sold it to Plaintiff Perry Stanley, Sr. ("Stanley"). Stanley allegedly used an enclosed trailer to haul the LeMans to his house in Johnstown. He also allegedly removed the tailgate from the GMC truck because he needed the

part. The GMC truck was found on July 13, 2005 with the tailgate and rear license plate missing. (Id. at ¶¶ 4-5).

On July 19, 2005, Malone sought a search warrant from the Licking County Court of Common Pleas authorizing the search of Stanley's property located at 5214 Riley Road in Johnstown, Ohio. The warrant, issued the same day, read as follows:

> Pursuant to Criminal Rule 31 [sic] (A,B,C, or D) Evidence of the Commission of a Criminal Offense, to wit: Receiving Stolen Property 2913.51 O.R.C. to wit: a 1967 Pontiac Lemans VIN #237177P253659, Ohio License Plate AGNTX, or parts from the 1967 Pontiac Lemans, and a pick-up tailgate colored purple fade into blue, Offense, to wit: Receiving Stolen Property 2913.51 O.R.C. to wit: Tools, Together with Other Fruits, Instrumentality's [sic] and Evidence of the crime of Receiving Stolen Property 2913.51 O.R.C. at this time unknown.

(Ex. B to Malone Aff.).

Following a pre-raid briefing led by Malone, the search warrant was executed on July 20, 2005. In all, approximately 51 law enforcement officers were involved. First, SWAT teams from the CDP and the LCSO gained entry and secured the premises. Stanley was secured in the back of an LCSO cruiser. Malone and other CDP Auto Theft Squad detectives, including Defendants Jane Helwagon (nka Jane Junk), Chris Britt, Ben Crawford, Matt Cook, Jeff Skinner, Mark Gardner, Robert Lagore, and Jeff Gubernath, then searched the property for several hours. Plaintiff Deborah Stanley returned home while the search was in progress, but was not detained. (Malone Aff. ¶¶ 8-10).

The detectives discovered many vehicles, partial vehicles and automobile parts scattered throughout the property. They did not find the 1967 Pontiac LeMans, or any of its parts. Nor did they find the tailgate from the GMC truck. Nevertheless, Malone authorized the seizure of five other

vehicles found on the property, along with a box containing titles to approximately 100 other vehicles. Many of those titles were not in Plaintiffs' names. Among the vehicles seized were a 1987 Chevrolet Silverado and a four-wheel ATV whose VIN plates had been removed.[1] Malone authorized the seizure of these vehicles pursuant to Ohio Revised Code § 4549.63(A).[2] (Malone Aff. ¶¶ 11, 14). The seizure of the Silverado and the ATV is not at issue in this suit because Plaintiffs have no ownership interest in either vehicle.

Plaintiffs do, however, have an ownership interest in the three other vehicles that were seized – a 1986 Monte Carlo, a 1970 Nova, and a 1970 Chevelle. Malone seized the Monte Carlo and the Nova because he noticed that their VIN plates were scratched, and the VIN plate on the Nova was partially bent. He believed that this constituted evidence of VIN tampering. Both vehicles were returned to Plaintiffs on January 6, 2006, after it was determined that the VIN plates had not been altered. (Malone Aff. ¶¶ 12-13).

Malone also authorized the seizure of a gold convertible found in Plaintiffs' garage. The VIN, 136670B198105, identified the car as a 1970 Chevelle. Malone had observed a stripped down

---

[1] "The VIN consists of more than a dozen digits, unique to each vehicle and required on all cars and trucks. *See* 49 CFR § 571.115 (1984). The VIN is roughly analogous to a serial number, but it can be deciphered to reveal not only the place of the automobile in the manufacturer's production run, but also the make, model, engine type, and place of manufacture of the vehicle. *See* § 565.4." New York v. Class, 475 U.S. 106, 111 (1986).

[2] That statute provides that "[a] law enforcement officer may seize and take possession of a vehicle or vehicle part if the officer has probable cause to believe that any vehicle identification number or derivative thereof on the vehicle or part has been removed, defaced, covered, altered, or destroyed in such a manner that the identity of the vehicle or part cannot be determined by visual examination of the number at the site where the manufacturer placed the number. The seizure shall be pursuant to a warrant, unless the circumstances are within one of the exceptions to the warrant requirement that have been established by the supreme court of the United States or of the supreme court of this state." Ohio Revised Code § 4549.63(A).

vehicle frame out in the yard. Its VIN plate had been removed, but the confidential number stamped into its firewall was visible.[3] This confidential number, 10B198105, which was in plain view, was derivative of the VIN of the gold Chevelle in the garage. Malone concluded that the VIN plate had been removed from the stripped down vehicle and placed in the gold Chevelle to conceal the gold Chevelle's true identity. Malone investigated further by removing a protective cover from the gold Chevelle to uncover the confidential number stamped into its firewall. That confidential number, 12B626034, corresponded to VIN 1D67J2B626034, which Malone identified as a 1972 Chevelle. According to Malone, a 1970 Chevelle is worth much more than a 1972 Chevelle. He speculated that the VIN on the gold Chevelle had been replaced in order to make it appear more valuable than it really was. (Malone Aff. ¶¶ 16-17).

The vehicles that were seized were towed to an impound lot. Perry Stanley, Sr., was criminally charged with tampering with the VIN on the Chevelle. He moved to suppress the evidence. On April 3, 2007, the Licking County Court of Common Pleas granted the motion, finding that because the search exceeded the scope of the search warrant, the subsequent seizure was illegal. (Ex. B to Pls.' Mot. Summ. J.). The prosecutor then dismissed the criminal charges.

Plaintiffs contend that the gold Chevelle suffered extensive damage as a result of improper storage conditions at the impound lot. It was eventually returned to Plaintiffs on July 17, 2007 pursuant to an order of the Licking County Court of Common Pleas. The court found that the car was not contraband. It noted that although the VIN did not match the confidential number on the

---

[3] According to Malone, a confidential number is derivative of a vehicle's VIN and is stamped into the vehicle at one or more locations at the time of manufacturing to aid in the vehicle's identification in case of theft or fire. Because of their placement, confidential numbers are more difficult to remove or alter than VINs. (Malone Aff. ¶ 15).

firewall, it appeared that the firewall, rather than the VIN plate, had been replaced, and that Perry Stanley, Sr. had a title to all of the relevant parts. (Ex. B to Pls.' Reply).

On July 20, 2007, Perry Stanley, Sr. and Deborah Stanley filed suit against Martin Malone, John Doe officers of the CDP, and John Doe deputies of the LCSO, seeking relief pursuant to 42 U.S.C. § 1983 for violations of their constitutional rights. Defendants were sued only in their individual capacities. Plaintiffs allege that Defendants, while acting under color of state law, unlawfully expanded the scope of the search warrant (Count 1), unlawfully seized the vehicles and vehicle titles (Count 2), unlawfully damaged Plaintiffs' house during the SWAT-style entry (Count 3), unlawfully detained Plaintiffs during the search (Count 4), and engaged in a conspiracy to violate their constitutional rights (Count 5).

On June 23, 2008, Plaintiffs were granted leave to amend their complaint to substitute the names of 28 CDP officers and 24 LCSO deputies for the John Doe defendants. In December of 2008, Plaintiffs agreed to dismiss their claims against several of the Columbus SWAT team officers. On February 26, 2009, the Court granted the LCSO Defendants' motion to dismiss Plaintiffs' claims against them as time-barred. Remaining defendants include CDP Auto Theft Squad detectives Martin Malone, Jane Helwagon (nka Jane Junk), Chris Britt, Ben Crawford, Matt Cook, Jeff Skinner, Mark Gardner, Robert Lagore, and Jeff Gubernath. They have now moved for summary judgment on all of Plaintiffs' claims. Plaintiffs have filed a cross-motion for summary judgment on the issue of liability with respect to Counts 1 and 2 of the Amended Complaint.

## II. Standard of Review

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of

every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any

"unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir.1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." Id. (citations omitted).

## III.    Analysis

### A.    Statute of Limitations

Plaintiffs' original complaint named only Martin Malone, along with John Doe officers from the CDP and the LCSO. An Amended Complaint filed on June 23, 2008 replaced the John Doe defendants with 52 newly-identified officers from the CDP and the LCSO. On February 26, 2009, the Court granted the LCSO Defendants' motion to dismiss the claims against them as time-barred. The Court noted that the statute of limitations for § 1983 claims in Ohio is two years. See Banks

v. City of Whitehall, 344 F.3d 550, 553 (6th Cir. 2003). Plaintiffs' causes of action accrued on July 20, 2005, the date of the search and seizure. The original Complaint was filed on July 20, 2007, the same day the statute of limitations expired. Because "a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a 'mistake concerning the party's identity' within the meaning of [Federal Rule of Civil Procedure] 15(c)," Moore v. Tennessee, 267 F. App'x 450, 455 (6th Cir. 2008), the Amended Complaint did not relate back and Plaintiffs' claims against the newly-identified LCSO Defendants were time-barred. (Feb. 26, 2009 Mem. Opinion & Order at 6-7).

Like the LCSO Defendants, CDP Auto Theft Squad Detectives Jane Helwagon, Chris Britt, Ben Crawford, Matt Cook, Jeff Skinner, Mark Gardner, Robert Lagore, and Jeff Gubernath were substituted for John Doe defendants in the Amended Complaint.[4] They have now moved to dismiss Plaintiffs' claims against them as time-barred for the same reasons set forth in this Court's previous order. In their memorandum in opposition to Defendants' motion for summary judgment, Plaintiffs agree not to "belabor this issue" in light of the Court's February 26, 2009 holding. They summarily repeat the same arguments made in connection with the LCSO Defendants' motion. For the reasons set forth in this Court's February 26, 2009 Memorandum Opinion and Order, the Court finds that Plaintiffs' claims against Jane Helwagon, Chris Britt, Ben Crawford, Matt Cook, Jeff Skinner, Mark Gardner, Robert Lagore, and Jeff Gubernath are time-barred. These defendants are entitled to summary judgment on that basis.

---

[4] Detective Harry Conley was also substituted, but Plaintiffs have already dismissed the claims against him.

**B.     Claims Against Martin Malone**

This leaves only the individual capacity claims against Defendant Martin Malone.  He has moved for summary judgment on all five counts of the Amended Complaint.  Plaintiffs, in turn, have moved for summary judgment as to the issue of liability with respect to Counts 1 and 2 of the Amended Complaint.

Plaintiffs' claims arise under 42 U.S.C. § 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  This statute "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).  In order to recover under § 1983, a plaintiff must prove that the defendant, while acting under color of state law, violated rights secured by the Constitution or laws of the United States.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

Plaintiffs allege that Malone, while acting under color of state law, violated their rights under the Fourth Amendment to the United States Constitution, and engaged in a conspiracy to violate their constitutional rights.[5]  In this case, it is undisputed that Malone was acting under color of state

---

[5]  In each Count of the Amended Complaint, Plaintiffs also allege that Defendants' conduct violated the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Plaintiffs, however, have not explained how these Amendments are implicated.  In their motion for summary judgment, Defendants note that Plaintiffs have asserted no legal or factual basis for these claims.  Plaintiffs failed to respond to this argument, apparently conceding that these

law. The Fourth Amendment provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. Searches and seizures executed without a warrant are presumptively unreasonable. Arizona v. Hicks, 480 U.S. 321, 327 (1987). "Unless an exception applies, a warrant is generally required to permit law enforcement officers to search a place or seize an item." United States v. Garcia, 496 F.3d 495, 508 (6th Cir. 2007).

Plaintiffs maintain that they are entitled to summary judgment on the issue of liability on Counts 1 and 2, alleging an unconstitutional search and illegal seizure of the vehicles and titles. With respect to these counts, Malone argues that, based on the evidence presented, no reasonable jury could find that he violated Plaintiffs' Fourth Amendment rights. In the alternative, he argues that he is entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). As the Sixth Circuit has explained:

> A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *See Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (citing *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151).

---

claims are not viable.

Morrison v. Board of Trustees of Green Tp., 583 F.3d 394, 400 (6th Cir. 2009).[6]

### 1.    Count 1: Unlawful Expansion of the Search Warrant

In Count 1 of the Amended Complaint, Plaintiffs allege that Defendants illegally expanded the search of "Plaintiffs' residence, real property, and personal property (including but not limited to the search of the vehicles that were seized)." (Am. Compl. ¶ 35). The parties have filed cross-motions for summary judgment on this claim. Plaintiffs have moved for summary judgment on the issue of liability only. They argue that Malone interpreted and executed the search warrant as if it were a "general warrant," unlawfully expanding its scope in violation of their Fourth Amendment rights. Malone, on the other hand, argues that he acted within the scope of the search warrant and that he is entitled to qualified immunity.

In the Court's view, there are no genuine issues of material fact with respect to Count 1. The determination of whether a challenged search was reasonable is a question of law. United States v. Higgins, 282 F.3d 1261, 1269-70 (10th Cir. 2002) (citing United States v. Gordon, 168 F.3d 1222, 1225 (10th Cir. 1999)). For the reasons set forth below, the Court finds that Malone did unlawfully expand the scope of the search warrant and, because the law was clearly established, he is not entitled to qualified immunity. Plaintiffs are therefore entitled to summary judgment on this claim with respect to the issue of liability.

The Fourth Amendment requires that search warrants be based on probable cause, supported by an oath or affirmation, and that they describe with particularity the place to be searched and the things to be seized. U.S. Const., amend. IV. The particularity requirement prohibits general

---

[6] In Pearson v. Callahan, -- U.S. --, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court recently held that these two prongs need not be considered in any particular order.

searches and prevents "the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant. " <u>Marron v. United States</u>, 275 U.S. 192, 196 (1927).

> The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

<u>Maryland v. Garrison</u>, 480 U.S. 79, 84 (1987).

As noted earlier, the search warrant in this case authorized a search of Plaintiffs' property located at 5214 Riley Road in Johnstown. The warrant authorized a search for the following:

> Pursuant to Criminal Rule 31 [sic] (A,B,C, or D) Evidence of the Commission of a Criminal Offense, to wit: Receiving Stolen Property 2913.51 O.R.C. to wit: a 1967 Pontiac Lemans VIN #237177P253659, Ohio License Plate AGNTX, or parts from the 1967 Pontiac Lemans, and a pick-up tailgate colored purple fade into blue, Offense, to wit: Receiving Stolen Property 2913.51 O.R.C. to wit: Tools, Together with Other Fruits, Instrumentality's [sic] and Evidence of the crime of Receiving Stolen Property 2913.51 O.R.C. at this time unknown.

(Ex. B to Malone Aff.). As required by the Fourth Amendment, this search warrant describes with particularity the property to be searched and the items to be seized. At issue is whether the inclusion of the phrase "Tools, Together with Other Fruits, Instrumentality's [sic] and Evidence of the crime of Receiving Stolen Property 2913.51 O.R.C. at this time unknown" authorized Malone to search for evidence that Plaintiffs had received stolen property unrelated to the theft of the LeMans and the pick-up tailgate.

It is undisputed that Malone interpreted this phrase to authorize a search for evidence that Plaintiffs were involved in receiving *any* stolen automobiles, not just the LeMans and the pickup tailgate. It is also undisputed that he and the other officers executed the warrant in accordance with this interpretation. Although the officers found no evidence of the 1967 LeMans or the pick-up tailgate, they did run numerous VINs through computer databases to determine whether other vehicles located on the property were stolen. They found no stolen vehicles, but did discover what they believed to be evidence of VIN tampering on five of the vehicles. They also discovered a box of titles. Defendants maintain that these five vehicles and the box of titles constituted other fruits, instrumentalities and evidence of the crime of Receiving Stolen Property and that the search for, and seizure of, these items was therefore within the scope of the search warrant. (Malone Dep. at 95-98, 164; Gubernath Dep. at 20-25; Cook Dep. at 31, 35-36, 40-41, 43; Gardner Dep. at 44-45; Crawford Dep. at 43-45, 70-73; Helwagon Dep. at 17, 25-26, 32-33; Skinner Dep. at 36; Britt Dep. at 32-35; Lagore Dep. at 56-58).

The Court rejects this argument. Two cases involving warrants with similar catch-all phrases are instructive. In United States v. Ables, 167 F.3d 1021 (6th Cir. 1999), Defendants, who operated a bingo hall, were suspected of engaging in money laundering and other related crimes. Search warrants were issued authorizing the seizure of:

> Books, records, receipts, bank statements and records, money drafts, letter of credit, money orders and cashier's checks, money wrappers, pass books, bank checks, automatic teller machine receipts, Western Union receipts, safety deposit box keys, *and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer and/or expenditure of money.*

Id. at 1033 (emphasis added). One of the defendants argued that this language was so broad that it violated the particularity requirement of the Fourth Amendment. The court disagreed, concluding

that this was not an impermissible "general warrant." It held that "[w]hen construed in light of the foregoing illustrative list of items, there can be no question that the phrase 'other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer and/or expenditure of money' did not authorize the IRS to conduct a general exploratory rummaging, as claimed by [Defendant]." Id. at 1034. In other words, this catch-all phrase must be read to be limited by the language that precedes it.

In Andresen v. Maryland, 427 U.S. 463 (1976), officials suspected that a real estate attorney had defrauded the purchaser of a subdivision's Lot 13T by falsely representing that the property was free of all liens. Officials sought warrants authorizing the search of two offices used by the attorney. The applications sought permission to search for and seize specific documents related to the sale and conveyance of Lot 13T "together with other fruits, instrumentalities and evidence of crime at this (time) unknown." Id. at 479. After the attorney was criminally charged, he moved to suppress evidence seized during the search. He argued that the inclusion of this catch-all phrase turned the warrants into unlawful "general warrants," authorizing the search and seizure of any evidence of any crime. The Court rejected this interpretation. It held that, when viewed in context, "the challenged phrase must be read as authorizing only the search for and seizure of evidence relating to 'the crime of false pretenses *with respect to Lot 13T*." Id. at 480 (emphasis added).

In Ables and Andresen, the courts held that inclusion of the catch-all phrases did not turn the warrants into unconstitutional "general warrants." The catch-all phrases were limited by the preceding language contained in the warrant. By implication, interpreting the catch-all phrases to authorize a general search for evidence of crimes other than those specific crimes included in the warrant would render the warrant unconstitutional. Therefore, the catch-all phrase "Tools, Together

with Other Fruits, Instrumentality's [sic] and Evidence of the crime of Receiving Stolen Property 2913.51 O.R.C. at this time unknown" must be read as authorizing the search and seizure only of other evidence that Plaintiffs had received the stolen 1967 LeMans or its parts or the stolen pickup tailgate.

Malone argues that to limit the search in this manner fails to give effect to all of the words in the warrant. The Court disagrees. The catch-all phrase serves to allow officers to search for and seize not only the LeMans, its parts, and the tailgate, but also any other evidence that Plaintiffs had recently possessed those items. For example, officers could search for photos of the stolen LeMans, evidence showing that Plaintiffs knew the alleged thieves or seller, or documentation that Plaintiffs had bought the LeMans or had recently resold it to someone else.

In short, Malone's broad interpretation of the search warrant was clearly flawed. He unlawfully expanded the scope of the search warrant by interpreting the catch-all phrase to authorize a search for evidence that Plaintiffs received other stolen property and for evidence that Plaintiffs were involved with VIN tampering. Pursuant to the Fourth Amendment, no warrant is to be issued except on probable cause, supported by an oath or affirmation. There is absolutely nothing in Malone's sworn affidavit, submitted in support of his request for the search warrant, that indicates that he had reason to believe that Plaintiffs were in possession of any stolen property other than the LeMans, its parts, and the pickup tailgate, or that Plaintiffs were involved with VIN tampering. Nor is there any indication that Malone otherwise made a sworn *verbal* statement to that effect. Therefore, no probable cause existed to justify a search for evidence unrelated to the theft of the LeMans, its parts, and the tailgate. To the extent that Malone admittedly executed the warrant in accordance with his flawed interpretation, the Court finds, as a matter of law, that he unlawfully

expanded the scope of the search warrant.

The only remaining question is whether Malone is entitled to qualified immunity on this claim. The Court has already found that, viewing the evidence in the light most favorable to Plaintiffs, Malone violated their Fourth Amendment right to be free from an unreasonable search. The Court also finds that, based on clearly established case law, no reasonable officer would have believed that the warrant authorized a search for evidence that Plaintiffs had received stolen vehicles other than the LeMans or the tailgate, or that Plaintiffs were unlawfully tampering with VINS. See Andresen, 427 U.S. at 480; Ables, 167 F.3d at 1034; Marron, 275 U.S. at 196. Therefore, Malone is not entitled to qualified immunity on this claim. For these reasons, the Court denies Malone's motion for summary judgment on Count 1, and grants Plaintiffs' motion for summary judgment on Count 1 with respect to the issue of liability.

### 2. Count 2: Unlawful Seizure of Vehicles and Vehicle Titles

Count 2 of the Amended Complaint challenges "the illegal seizure of Plaintiffs' automobiles and automobile titles along with other items, and the subsequent refusal of Defendant Martin Malone to release the vehicles for an excessive amount of time." (Am. Compl. ¶ 36). The determination of whether the facts establish an unconstitutional seizure is a question of law. United States v. Garrido-Santana, 360 F.3d 565, 570 (6th Cir. 2004). In Horton v. California, 496 U.S. 128, 140 (1990), the Supreme Court held that "[i]f the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more."

Malone argues that even if the seizure of the vehicles and the box of titles exceeded the scope of the search warrant, the seizure was lawful because: (a) it was reasonably related to the offense listed in the search warrant; (b) it was authorized by Ohio Revised Code § 4549.63(A); and (c) it fell within the scope of the "plain view" exception to the warrant requirement. He also argues that he is entitled to qualified immunity on this claim. For the reasons explained below, the Court rejects each of these arguments.

### a.      Reasonably Related

Malone notes that even evidence "not described in a search warrant may be seized if it is 'reasonably related to the offense which formed the basis for the search warrant.'" United States v. Fortenberry, 860 F.2d 628, 636 (5th Cir. 1988) (quoting United States v. Monroe, 421 F.2d 644, 646 (5th Cir. 1970)). He argues that even if the Monte Carlo, the Nova, the Chevelle, and the box of titles were not within the scope of the warrant, they were reasonably related to the crime that was the subject of the warrant, *i.e.*, receiving stolen property.

The Court rejects this argument for many of the same reasons already discussed. The specific offense that formed the basis for the search warrant was receipt of the stolen LeMans, its parts, and the pickup tailgate. Malone was authorized to search for evidence tying Plaintiffs *only* to the theft of these particular vehicles. Evidence that Plaintiffs had tampered with the VIN plates on the Monte Carlo, the Nova, or the Chevelle, and evidence that Plaintiffs possessed the titles to numerous other vehicles, is not "reasonably related" to the specific crime that formed the basis for the search warrant. In short, none of the evidence seized implicated Plaintiffs in the crime that was being investigated, *i.e.*, receipt of the stolen LeMans and the pickup tailgate. Compare United States v. Brown, 49 F.3d 1162, 1169 (6th Cir. 1995) (in a case involving a drive-by shooting at a

synagogue, evidence showing defendant's membership in the Ku Klux Klan and other white supremacy groups was "reasonably related" to the charge of being accessory after the fact to conspiracy to violate civil rights); United States v. Wright, 343 F.3d 849, 863 (6th Cir. 2003) (seizure of leather vest in gang colors, address books and other documents indicated defendant's involvement in drug conspiracy and murder, and was "reasonably related" to crimes charged in affidavit).

### b. Ohio Revised Code § 4549.63(A)

Malone also maintains that seizure of the vehicles was justified based on Ohio Revised Code § 4549.63(A). That statute allows for seizure of a vehicle "if the officer has probable cause to believe that any vehicle identification number or derivative thereof on the vehicle or part has been removed, defaced, covered, altered, or destroyed in such a manner that the identity of the vehicle or part cannot be determined by visual examination of the number at the site where the manufacturer placed the number." According to Malone, he reasonably believed that the VIN plates on the Monte Carlo and the Nova had been tampered with because they were scratched, and the VIN plate on the Nova was also partially bent. (Malone Aff. ¶¶ 12-13).

According to the plain language of the statute, suspicion of VIN tampering, standing alone, is not enough to justify a seizure. Seizure is authorized only if the VIN has been altered or defaced "in such a manner that the identity of the vehicle or part cannot be determined by visual inspection of the number. . ." Ohio Revised Code § 4549.63(A). Malone admitted in his deposition that the VIN on the Monte Carlo was still legible. (Malone Dep. at 115). Therefore, the seizure of the Monte Carlo was not authorized under § 4549.63(A).

It is not clear from the record whether the VIN on the Nova was still legible. But even if it was illegible, the seizure of the Nova was still unlawful unless Malone can prove that an exception to the warrant requirement applies. Section 4549.63(A) states that "[t]he seizure shall be pursuant to a warrant, unless the circumstances are within one of the exceptions to the warrant requirement that have been established by the supreme court of the United States or of the supreme court of this state." Ohio Revised Code § 4549.63(A). Likewise, even if Malone reasonably believed that the VIN plate had been removed from the stripped down frame and placed inside the gold Chevelle in order to conceal the car's true identity, § 4549.63(A) did not permit Malone to seize the Chevelle without a warrant unless an exception to the warrant requirement applies. The Court therefore turns to the question of whether the seizure of the vehicles fell within the scope of the "plain view" exception to the warrant requirement.

### c. Plain View Exception

Malone maintains that even if the vehicles and titles fell outside the scope of the search warrant, the seizure was nevertheless lawful based on the "plain view" exception to the warrant requirement.[7] For the "plain view" exception to apply, the evidence must be "(1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from where the object can be seen; and (4) seized by an officer who has a lawful right of access to the object itself." United States v. Roark, 36 F.3d 14, 18 (6th Cir.1994) (citing Horton, 496 U.S. at 136-37).

---

[7] Plaintiffs maintain that it is obvious that this argument has been generated after the fact. Because Defendants clearly believed that they were authorized to search for evidence of *any* auto theft crime and any VIN tampering crime, there would have been no reason for them to limit their search to items in plain view.

### i)    1986 Monte Carlo and 1970 Nova

Plaintiffs argue that the plain view exception does not apply to Malone's seizure of the Monte Carlo or the Nova because the evidence at issue --scratched VIN plates on both cars and a partially bent VIN plate on the Nova -- was not "of a character that is immediately incriminating." Id.  Plaintiffs note that it is not illegal to have scratched or bent VIN plates.  The statute requires only that the VIN plates be legible.  Plaintiffs further argue that because these were older vehicles, it was not unusual that the VIN plates were scratched and bent.  Malone admitted that it was determined upon further investigation that the VIN plates on the Monte Carlo and the Nova had not been altered.  (Malone Aff. ¶¶ 12-13).  However, at the time of the search and seizure, he thought that there was probable cause to believe they had been tampered with.  Malone argues that defacing or altering a VIN plate is usually evidence of the crime of Receiving Stolen Property, and that lawful owners of vehicles have no reason to deface the VIN plates on their cars.

The Sixth Circuit has offered guidance on how to determine if evidence is of a character that is immediately incriminating.  In United States v. Garcia, 496 F.3d 495 (6th Cir. 2007), the court explained:

> [I]n determining whether an object's incriminating nature is "immediately apparent," we look to three factors, none of which is necessary but each of which is instructive: (1) "a nexus between the seized object and the items particularized in the search warrant"; (2) "whether the 'intrinsic nature' or appearance of the seized object gives probable cause to believe that it is associated with criminal activity"; and (3) whether "the executing officers can at the time of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature." *Id.* (*quoting United States v. Beal*, 810 F.2d 574, 576-77 (6th Cir.1987)).  In addition to these three factors, we have specifically held that an object's incriminating nature is not immediately apparent if it "appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal

activity[.]" *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 555 (6th Cir. 2003) (*quoting McLevain*, 310 F.3d at 443). Moreover, the officer must recognize the incriminating nature of an object as a result of his "immediate" or "instantaneous sensory perception."

Id. at 510 -511. Typical examples of objects whose incriminating nature is immediately apparent include illegal drugs and child pornography.

In this case, there is little or no nexus between the vehicles that were seized and the items that were particularized in the warrant, *i.e.,* the LeMans and the pickup tailgate. The question of whether Plaintiffs had tampered with the VIN plates on the Monte Carlo and the Nova is completely unrelated to the question of whether Plaintiffs had received the stolen LeMans or the tailgate. Malone contends that when he saw the scratched and partially bent VIN plates, he suspected that Plaintiffs might be involved in the receipt of stolen vehicles other than the LeMans and the pickup. But even though the appearance of the VIN plates might have aroused suspicion, there was nothing intrinsically illegal about them, and further investigation was required to determine if the VIN plates had actually been tampered with.

Under these circumstances, the Court finds that the "plain view" exception to the warrant requirement does not apply. The incriminating nature of the scratched and partially bent VIN plates was not immediately apparent. Because the Monte Carlo and the Nova fell outside the scope of the search warrant, and because the "plain view" exception does not apply, the Court finds that Malone illegally seized these two vehicles.

### ii) Chevelle

Likewise, Plaintiffs argue that the "plain view" exception does not apply to the gold Chevelle because the evidence was not immediately incriminating. Stanley told Malone that he was restoring the gold Chevelle using parts from the stripped down frame of another vehicle. (Malone Dep. at

110). The gold Chevelle had a legible VIN plate and there was absolutely no evidence that it had been tampered with. It was not scratched or bent. Standing alone, nothing about the gold Chevelle was immediately incriminating. In fact, Malone did not become suspicious until he noticed that the VIN plate had been removed from the stripped down vehicle. Upon further inspection, he noticed that the VIN in the gold Chevelle matched the confidential number stamped in the firewall of the stripped down vehicle. Only then did he suspect that Plaintiffs had replaced the original VIN plate in the gold Chevelle to conceal the car's true identity. To confirm his suspicions, he removed a protective cover so that he could access the confidential number stamped in the firewall of the gold Chevelle. Once he removed the protective cover, he discovered that the VIN on the gold Chevelle did not match the confidential number stamped in its firewall.

Applying the factors set forth in Garcia, the Court finds that the incriminating nature of the gold Chevelle was not immediately apparent. Again, there is little or no nexus between the gold Chevelle and the items particularized in the search warrant. Moreover, nothing about the intrinsic nature or appearance of the car gives probable cause to believe that it was associated with criminal activity. Finally, at the time Malone first saw the gold Chevelle, he did not immediately recognize its incriminating nature as a result of his "instantaneous sensory perception." Beal, 810 F.2d at 577. Further investigation was required. He had to compare the confidential number on the stripped down vehicle to the VIN in the gold Chevelle, and he later unscrewed a protective cover to access the confidential number on the gold Chevelle's firewall in order to confirm his suspicions. Under these circumstances, it cannot be said that the plain view exception justifies Malone's seizure of the gold Chevelle. That seizure was, therefore, illegal.

### iii)    Box of Titles

Plaintiffs also argue that Malone's seizure of the box of titles does not fall within the scope of the plain view exception to the warrant requirement because, again, the titles were not of a nature that was immediately incriminating. Malone argues that when a person possesses vehicle titles not bearing that person's own name, this often indicates that he or she is involved in receiving stolen property. Although Plaintiffs' possession of the box of titles may arouse suspicion, the Court finds that the incriminating nature of this evidence is not immediately apparent. Again, there is no nexus between the titles and the items particularized in the search warrant. Plaintiffs did not possess titles for the LeMans or the pickup, nor would they have been expected to since those vehicles were reportedly stolen. (Malone Dep. at 121).

The intrinsic nature of the titles does not give probable cause to believe that they were associated with criminal activity. In Garcia, the Sixth Circuit held that the receipts, financial records and invoices seized by the officers did not fall within the scope of the plain view doctrine because these documents "in and of themselves, are lawful and innocuous items." 496 F.3d at 511. The same is true of vehicle titles. Even though many of the titles did not bear Plaintiffs' names, this, in and of itself, does not establish probable cause of their incriminating nature. Further investigation was needed to determine whether the titles were for any cars that had been reported stolen. As in Garcia, under these circumstances, the plain view exception is inapplicable.

### iv)    State Court Decision

In connection with Stanley's criminal case, the Licking County Court of Common Pleas granted his motion to suppress the evidence seized during the search. Although the parties agree that the state court decision in the criminal case is not binding on this Court and has no preclusive

effect, see Knott v. Sullivan, 418 F.3d 561, 568 (6th Cir. 2005), Plaintiffs submit it as persuasive

authority. The state court held as follows:

> The box of car titles simply do not come within the scope of the warrant of any affidavit. No mention of car titles was ever given, nothing indicates a history of car titles in connection with this investigation nor is there anything set out in the affidavit or the warrant to indicate that there is anything suspected here beyond one car (which is explicitly named and described and had flames painted on the side) and the purple tailgate, also one of a kind or hard to confuse with any other tailgate.

> The Court finds that the warrant did not authorize, nor did any exception encompass, seizure of anything beyond the 1967 Pontiac LeMans with the Vehicle Identification Number set out on it or the pickup truck tailgate. Any other car needing to be searched after the search had been executed with the two SWAT teams and detectives from two counties certainly could have been secured for a sufficient length of time necessary to obtain warrants for those vehicles, as could the car titles discovered in the home (while not reaching the issue of cars or tailgates inside the house). Such was not the case.

> The Court finds the car titles are not sufficiently cognizant as contraband or stolen property simply by looking at them. No testimony was provided to the Court to indicate the vehicles were on a known hot list of stolen vehicles or otherwise, or without further intrusion, recognizable as fruits of an offense of stolen property.

(Judgment Entry of April 3, 2007; Ex. B to Pls.' Mot. Summ. J.).

Like the state court, this Court finds that the warrant did not authorize the seizure of the

Monte Carlo, the Nova, the Chevelle, or the box of titles, and the "plain view" exception does not

apply. While certain items discovered by the detectives during the search may have aroused some

suspicion that Plaintiffs were involved in other criminal activity, there was absolutely no reason why

the property could not have been secured while the officers obtained the necessary additional search

warrants.

#### d. Qualified Immunity

Again, Malone argues that he is entitled to qualified immunity on this claim. Again, the Court disagrees. Viewing the evidence in a light most favorable to Plaintiffs, Malone unlawfully seized the Monte Carlo, the Nova, the Chevelle, and the box of titles in violation of Plaintiffs' Fourth Amendment rights. As explained above, the search warrant did not authorize seizure of these items and they were not reasonably related to the crime charged in the affidavit. Moreover, because the incriminating nature of these objects was not immediately apparent, the "plain view" exception to the warrant requirement does not apply.

In addition, the law in this area was clearly established at the time of the seizure. See Beal, 810 F.2d at 576-77; Shamaeizadeh v. Cunigan, 338 F.3d 535, 555 (6th Cir. 2003) (providing guidance on when evidence is of a nature that is immediately incriminating). Based on this clearly established case law, no reasonable officer would have believed that the warrantless seizure of the Monte Carlo, the Nova, the Chevelle, and the box of titles was permissible. The Court therefore concludes that Malone is not entitled to qualified immunity on Plaintiffs' claim of an illegal seizure. For the reasons stated above, with respect to Count 2 of the Amended Complaint, the Court grants Plaintiffs' motion for summary judgment on the issue of liability and denies Defendants' motion for summary judgment.[8]

#### 3. Count 3: Unlawful Seizure Resulting in Damage to Plaintiffs' Home and Count 4: Unlawful Seizure of Plaintiffs' Persons

Count 3 of the Amended Complaint concerns "the damage Defendants caused to the

---

[8] Because damages are not currently at issue, there is no need for the Court to consider the appraisal for the Chevelle, attached as Exhibit C to Plaintiffs' motion for summary judgment. Defendants object to this appraisal because it is not authenticated.

Plaintiffs' home during the 'SWAT-style' entry and search, including but not limited to damage to doors in the Plaintiffs' home." (Am. Compl. ¶ 37). Count 4 of the Amended Complaint challenges "Defendants' detention of the Plaintiffs' [sic] during the lengthy and illegal expansion of the search." (Am. Compl. ¶ 38).[9] Malone has submitted an affidavit stating that he and other Auto Squad detectives waited down the road while the SWAT teams secured the property and detained Perry Stanley, Sr. inside an LCSO cruiser. (Malone Aff. ¶¶ 8-9). With respect to Counts 3 and 4, Malone argues only that because he was not personally involved in either the entry into Plaintiffs' home or the detention of Perry Stanley, Sr., he cannot be held liable for these alleged constitutional violations.

In response, citing <u>Hall v. Shipley</u>, 932 F.2d 1147 (6th Cir. 1991), Plaintiffs argue that because Malone was the detective who sought and obtained the search warrant and because he participated in the search itself, he can be held liable for the conduct of the other officers. In <u>Hall</u>, Officer Jon Shipley obtained a search warrant authorizing the search of Hall's apartment to look for marijuana. The officers executing the warrant knocked and announced their presence and then forced the door open with a battering ram. Hall was naked at the time and was forced to remain that way while the officers conducted the search. He filed a § 1983 action against Shipley and the other officers. In connection with Hall's claim that the officers violated his constitutional rights by forcing him to remain naked during the search, Shipley argued that he should not be held liable because he was standing on the sidewalk when the other officers forced their way into the house; thereafter, he conducted the search of the residence while two other officers held plaintiff naked at

---

[9] It now appears to be undisputed that only Perry Stanley, Sr. was detained; Deborah Stanley was not.

gunpoint.

Shipley maintained that he was not responsible for the actions of these other officers. The court disagreed, noting:

> "As a general rule, mere presence at the scene of the search, without a showing of direct responsibility for the action, will not subject an officer to liability." Ghandi v. Police Depart. of the City of Detroit, 747 F.2d 338, 352 (6th Cir.1984). Further, a supervisory official's failure to supervise, control, or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. Poe v. Haydon, 853 F.2d at 429.

Hall, 932 F.2d at 1154. The court found that Shipley's involvement surpassed "mere presence" at the scene. Shipley was "the prime mover in obtaining the warrant and in planning and initiating the search itself. . . Both in entering the apartment and in the manner of the search itself a direct causal connection exists between Officer Shipley's actions and the alleged constitutional violation as to the reasonableness of the search." Id.

Notably, Defendants completely fail to respond to Plaintiffs' argument in their reply brief. In the Court's view, the fact that Malone was waiting down the road while the SWAT teams secured the property is not necessarily dispositive. It is clear that the search warrant was issued at Malone's request and that he conducted a briefing with all of the officers prior to the execution of the warrant. What is unclear from the record is whether he acted in a supervisory role with respect to the execution of the warrant and whether he authorized the SWAT-style entry into Plaintiffs' home. Genuine issues of material fact therefore preclude summary judgment on Count 3, involving the alleged damage to Plaintiffs' property.[10]

---

[10] Malone has not argued that he is entitled to qualified immunity on this claim.

Malone, however, is entitled to summary judgment on Count 4, the claim of unlawful detention. Even if Malone directed others to detain Stanley during the search, there is no constitutional violation. As Malone notes, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Michigan v. Summers, 452 U.S. 692, 705 (1981).

Plaintiffs argue that because the search was planned and executed as a general warrant, it was unlawful *ab initio,* rendering the detention unlawful also. The Court rejects this argument. The search warrant was issued because the judge found probable cause to believe that the LeMans, its parts, and/or the pickup tailgate would be found on Plaintiffs' property. Law enforcement officials were authorized to detain the occupants of the premises while they searched for these specific items. The fact that the officers may have unlawfully expanded the scope of the search warrant is simply irrelevant to this claim. Viewing the evidence in a light most favorable to Plaintiffs, the Court finds that Malone is entitled to summary judgment on Count 4.

### 4.    Count 5: Civil Conspiracy

In Count 5 of the Amended Complaint, Plaintiffs allege that Defendants conspired to violate Plaintiffs' Fourth Amendment rights. Plaintiffs again seek relief under 42 U.S.C. § 1983. (Am. Compl. ¶ 39). "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." Hooks v. Hooks, 771 F.2d 935, 943-44 (6th Cir. 1985). A plaintiff alleging civil conspiracy must prove "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." Id. at 944. More specifically, with respect to claims of civil conspiracy brought under 42 U.S.C. § 1983, a plaintiff must prove "(1) an actual

violation of a right protected under § 1983, and (2) actions taken in concert by defendants with the specific intent to violate the aforementioned right." Kerr v. Lyford, 171 F.3d 330, 340 (5th Cir. 1999) (citing Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994)).

In this case, the Court has already determined that Defendants illegally searched and seized Plaintiffs' property in violation of Plaintiff's Fourth Amendment rights. The question is whether Plaintiffs have presented sufficient evidence from which a reasonable jury could find that Defendants acted in concert with the specific intent to violate those rights.

Defendants contend that the only evidence Plaintiffs have to support the conspiracy claim is Stanley's deposition testimony that he observed the officers standing in a circle in front of his garage after they had searched his property. Stanley admitted that he could not hear anything they said because he was detained in the police cruiser. However, he speculated that they had found nothing illegal during the initial search and were conspiring about what to do next. (Perry Stanley Dep. at 239-40). Citing Moore v. City of Paducah, 890 F.2d 831 (6th Cir. 1989), Defendants maintain that such speculation is insufficient to establish a conspiracy. The Court agrees.

Plaintiffs note, however, that some of the officers also testified about a pre-raid briefing with Malone. As a result of this briefing, the officers understood that they would be searching for *any* evidence of auto theft, regardless of whether it was related to the theft of the LeMans or the tailgate. Some of the officers also understood that they would be looking for evidence of VIN tampering. (Cook Dep. at 16-17; Crawford Dep. at 24-25; Britt Dep. at 32-33; Junk Dep. at 17; Gubernath Dep. at 20; Lagore Dep. at 21). Plaintiffs argue that this evidence -- supporting a finding that the officers had a single plan for executing the search warrant -- is sufficient to create a genuine issue of material fact.

The Court rejects this argument. As an initial matter, there is little, if any, evidence to support a finding that there was any conspiratorial "agreement" at all. The officers simply testified that they attended a pre-raid briefing during which Malone, the lead investigator on the case, told them that they would be looking for evidence of auto theft. The mere fact that they executed the search warrant in accordance with Malone's instructions does not mean that they had reached any kind of "agreement" with him to violate Plaintiffs' constitutional rights.

Moreover, even if Defendants agreed to execute the search warrant in the manner suggested by Malone, proof that they intended to engage in the conduct that caused Plaintiffs' constitutional injury is insufficient. In order to establish the requisite specific intent to support a claim of civil conspiracy, Plaintiffs must also prove that the officers were aware of the unlawfulness of the proposed conduct at the inception of the agreement and acted with the intent to violate Plaintiffs' constitutional rights.

In this case, the officers testified that they believed that the search warrant specifically authorized them to search for, and seize, evidence of auto theft unrelated to the theft of the LeMans and the tailgate. (Malone Dep. at 97; Cook Dep. at 16-17; Crawford Dep. at 24-25; Britt Dep. at 32-33; Junk Dep. at 17; Gubernath Dep. at 20; Lagore Dep. at 21). As discussed earlier, they relied on the catch-all phrase in the warrant permitting them to search for tools, other fruits and instrumentalities, and evidence of the crime of receiving stolen property. Although the Court has now concluded that the catch-all phrase is not as broad as the officers initially believed it was, this does not change the fact that, at the inception of the alleged agreement, the officers believed that the

proposed search and seizure would be constitutional.[11]  Absent any evidence that the officers knew that their proposed conduct was illegal and that they acted with the specific intent to violate Plaintiffs' Fourth Amendment rights, the conspiracy claim is not viable and Malone is entitled to summary judgment.[12]

## IV.    Conclusion

For the reasons set forth above, the Court **GRANTS IN PART and DENIES IN PART** Defendants' motion for summary judgment.  (Doc. 117).  Plaintiffs' claims against Jane Helwagon (nka Jane Junk), Chris Britt, Ben Crawford, Matt Cook, Jeff Skinner, Mark Gardner, Robert Lagore, and Jeff Gubernath are time-barred.  The Court therefore grants summary judgment in full in favor of these Defendants.  As to the claims against Defendant Martin Malone, the Court grants summary judgment in his favor on Counts 4 and 5 of the Amended Complaint.  The Court, however, denies his motion for summary judgment on Counts 1, 2, and 3.

The Court **GRANTS** Plaintiffs' motion for summary judgment on the issue of liability on Counts 1 and 2 of the Amended Complaint.  (Doc. 118).

---

[11]  In the Court's view, it would be a rare occasion for officers to purposely decide to illegally expand the scope of a search warrant.  The existence of the exclusionary rule provides a built-in disincentive for officers to conspire to commit an illegal search and seizure of property.

[12]  In his reply brief, Malone also argues for the first time that this claim is barred by the intra-corporate conspiracy doctrine.  A conspiracy requires a plurality of actors, and because employees who work for the same agency or corporation are deemed to be a part of a single entity, they cannot conspire with themselves.  Johnson v. Hills and Dales Gen. Hosp., 40 F.3d 837, 838 (6th Cir. 1994).  In this case, however, Plaintiffs have alleged that Malone and the other CDP defendants conspired with officers from the Licking County Sheriff's Office.  Because the alleged conspiracy involved at least two different agencies, the intra-corporate conspiracy doctrine is not applicable.

**IT IS SO ORDERED.**


Date: February 11, 2010                    **/s/ John D. Holschuh**
                                           John D. Holschuh, Judge
                                           United States District Court